WAYNE KEYSER, Plaintiff-Appellee, v. METROPOLITAN SANITARY DISTRICT, Defendant-Appellant.

First District (1st Division)   No. 87—0390

Opinion filed December 21, 1987.—Rehearing denied February 5, 1988.

Baker & McKenzie, of Chicago (Francis D. Morrissey, John W. Dondanville, Mark L. Karasik, and Luke L. Dauchot, of counsel), for appellant.

Robert J. Cooney & Associates, of Chicago (Kevin J. Conway and Robert N. Wadington, of counsel), for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The defendant Metropolitan Sanitary District (MSD) appeals from the judgment of the circuit court of Cook County entered in favor of plaintiff Wayne Keyser following a jury verdict in the amount of $350,000, contending that the trial court erred when it denied its motion to dismiss the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*) count of Keyser's complaint, and that it erred when it denied its motion for judgment notwithstanding the verdict.

The plaintiff, Wayne Keyser, was a certified miner employed by Morrison-Knudsen, Paschen, Kenny and S & M Company, a general contractor hired by the defendant MSD for its "deep tunnel" project in Chicago, Illinois. Plaintiff was involved in excavating that portion of the tunnel known as the "Nashville Avenue Shaft." Working in the "future tail" tunnel where the excavation took place, plaintiff and his co-workers would loosen the rock by drilling, blasting, and manually removing the rock; then, an "end loader" would move down the right-hand side of the tunnel and clean out the rock debris into a "muck bucket" that was, thereafter, mechanically lifted out of the hole and emptied. Plaintiff testified that the end loader always moved down the right side and always left a ridge of muck (loose rock that was moist with water and sometimes oil) on the left side of the future tail tunnel. The ridge of muck was about two feet high and 20 to 25 feet long. The total length of the tail tunnel was about 100 feet long.

Plaintiff testified that the left side of the wall was lined with steel pegs from which hung a telephone for above-ground communication, the junction box, and a string of temporary lights. According to the plaintiff, the steel pegs were placed on down the left wall about seven feet from the tunnel floor and protruded 18 inches to 2 feet at an upward angle, so that the lighting cables would fall toward the tunnel

wall. The lighting cables were between 75 and 100 feet long when uncoiled and weighed about 100 pounds. Plaintiff testified that because of the height and the angle of the pegs, every time the lighting cables were moved it necessitated using some type of support. Keyser stated that he and his co-workers used the muck pile, the bucket part of the end loader, or the boom of the drill as supports to elevate them to the height needed to lift the coiled cable up and off the peg.

On June 18, 1980, plaintiff was working in one of these tunnels and stepped on the muck pile to remove a rolled up cable from its peg when he slipped on the loose rock. Although he did not fall, plaintiff injured his back and required surgery on three separate occasions following the accident. Plaintiff is now unable to perform heavy work.

Plaintiff filed a complaint against MSD on March 4, 1981. On May 3, 1985, plaintiff amended the complaint to add a Structural Work Act count. (Ill. Rev. Stat. 1985, ch. 40, par. 60.) Subsequently, defendant filed a motion to dismiss the Structural Work Act count of the amended complaint, and argued that the allegations of the plaintiff demonstrate that he merely slipped on what was the floor of the tunnel, and even when taken as true, the allegations did not constitute a claim under the statute, as a matter of law. However, the trial court denied MSD's motion and allowed plaintiff to file a second amended complaint in which he alleged, in the alternative, that either the muck on the tunnel floor on which he slipped constituted an "inadequate" support or that the defendant had failed to provide a necessary support required by his work. Consistent with the plaintiff's amended complaint, at the close of the evidence, the trial court instructed the jury pursuant to Illinois Pattern Jury Instructions, Civil, No. 180.15 (2d ed. 1971) (hereinafter IPI Civil 2d), which provides: "The statute [is] violated if the persons having charge of the work failed to provide a support under circumstances which required a support in order to protect the plaintiff from injury, and the defendants knew or, in the exercise of ordinary care, could have known that a support was required." (IPI Civil 2d No. 180.15.) As stated above, the jury thereafter rendered a verdict for the plaintiff and against MSD in the amount of $350,000. The defendant filed a post-trial motion for judgment notwithstanding the verdict which was denied and it has now appealed to this court.

■ It is undisputed that excavation of a tunnel, such as the Nashville Avenue Shaft here, is the construction of a structure within the meaning of the Structural Work Act. (See *Navlyt v. Kalinich* (1972), 53 Ill. 2d 137, 290 N.E.2d 219.) The question in this case is whether the jury verdict finding MSD liable for a wilful violation of the Struc-

tural Work Act either because the ridge of muck was an inadequate support or because MSD failed to provide plaintiff Keyser with a necessary support was against the manifest weight of the evidence.

■ To sustain his Structural Work Act claim, the plaintiff must offer proof that MSD, while in charge of the Nashville Avenue Shaft portion of the Deep Tunnel Project, either provided an unsafe device or wilfully failed to provide a device necessary in the construction of the tunnel and that plaintiff's injuries were proximately caused by defendant's violation. (Ill. Rev. Stat. 1985, ch. 48, par. 60; *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1090, 428 N.E.2d 1051, 1059.) The issue of proximate cause here was submitted to the jury with proper instructions and has not been raised as an issue on appeal. The specific issue here, as it was below, is whether in the exercise of ordinary care the defendant should have known that plaintiff was using the muck pile, which was an inadequate support, to reach the overhead electric cables or whether MSD, knowing that a device for support was necessary, wilfully failed to provide plaintiff with an adequate support.

The defendant concedes that it was in charge of the work here, but denies that it provided an unsafe device or support, *i.e.*, the muck pile, or that there was any wilful failure on its part to provide a necessary and adequate support. Defendant asserts that the muck pile was a part of the tunnel floor and, hence, could not be considered a support and that it could not have known in the exercise of ordinary care that plaintiff was stepping on the accumulated loose rock to get to the coiled electric cables. The defendant further notes that at trial the exact height of the pegs involved in plaintiff's accident was never ascertained, and thus, it submits that the plaintiff could have safely removed the cable without a support for elevation. Furthermore, the defendant contends that the plaintiff could not and did not establish that MSD failed to provide an adequate device within the coverage of the Structural Work Act. The defendant argues that there was no wilful failure on its part to provide adequate supports in the Nashville Avenue Shaft because, in fact, customized ladders and scaffolds were available for the plaintiff's use. All he needed to do was pick up the telephone in the tunnel and request one, but he did not do so.

Under these circumstances, MSD concludes, it was not required to furnish plaintiff with a support to accomplish his task, as there was absolutely no evidence that defendant wilfully violated the statute, and therefore, the jury verdict in favor of the plaintiff was against the manifest weight of the evidence. Thus, the trial court also improperly denied its post-trial motion for judgment notwithstanding the

verdict and should have set aside the verdict and entered judgment for the defendant.

In its argument that the muck pile did not constitute a support, the defendant contends that to come within the protection of the Act the alleged support "must elevate the worker in order to perform or accommodate performance of a construction task." (Ill. Rev. Stat. 1985, ch. 48, par. 60.) Here, the muck pile existed only because it was a natural by-product of the excavation process, and it was not constructed for or intended to provide support for plaintiff. Consequently, MSD argues it is clear that this debris in the tunnel did not constitute a support within the meaning of the statute, as a matter of law, and that the trial court erred in denying its motion for judgment notwithstanding the verdict.

MSD cites a number of cases which it asserts addressed a similar issue as that presented here and found that the plaintiff had not been injured by an inadequate support. (See *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 512 N.E.2d 1223 (stairs were only used for ingress and egress and did not provide a support for the plaintiff in the performance of some hazardous activity); *Hall v. Canady* (1986), 149 Ill. App. 3d 544, 500 N.E.2d 689 (permanent wooden deck and railing were not erected or constructed for use in construction or repair and thus were not a scaffold within the meaning of the Act); *Quinlin v. Northwestern Steel & Wire Co.* (1985), 139 Ill. App. 3d 535, 487 N.E.2d 1124 (no Structural Work Act violation where plaintiff was injured by manner in which metal sheeting was stacked and not by defective nature of the support being used to reach the sheeting); *Page v. Corley Cos.* (1985), 131 Ill. App. 3d 56, 475 N.E.2d 571 (masonite flooring held not to constitute a support because it was intended only to protect the finished flooring and not to provide a working platform); *Herman v. Swisher* (1983), 115 Ill. App. 3d 179, 450 N.E.2d 28 (injury not covered by Act because at the time plaintiff fell into basement opening he was standing on the ground, which does not constitute a scaffold); *Quinn v. L.B.C., Inc.* (1981), 94 Ill. App. 3d 660, 418 N.E.2d 1011 (ground floor of building under construction was merely used for ingress and egress and was not relied on as a "support"); *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024, 414 N.E.2d 147 (injury caused when support uprooted a tree which fell on plaintiff and not by inadequacy of the support as intended by the statute).) MSD additionally argues that, even if the muck pile could constitute a support, it did not in this situation, since plaintiff stepped on it only to effect a better horizontal reach and not for elevation to accomplish a task. See *Page v. Corley Cos.* (1985), 131

Ill. App. 3d 56, 475 N.E.2d 571; *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024, 414 N.E.2d 147. See also *Swendsen v. Brighton Building & Maintenance Co.* (1976), 41 Ill. App. 3d 930, 933, 355 N.E.2d 164, 166 ("fact that a worker chooses to walk upon a stack of material instead of around it does not convert the materials into a scaffold within the meaning of the Act. To hold otherwise, would permit an employee to stand or walk wherever he wishes and, if he is off the ground, his choice becomes a scaffold").

On the other hand, the plaintiff argues here, as he did below, that if the muck pile did not constitute a support for the work in the tunnel, MSD was, nevertheless, liable for failure to provide a necessary support as is also required by the statute. In contrast to the cases cited by the defendant, the plaintiff cites the following cases, which he contends are more analogous to the present case: *Juliano v. Oravec* (1973), 53 Ill. 2d 566, 293 N.E.2d 897 (subflooring through which plaintiff fell was sole source of support and thus was within the ambit of the Act); *Navlyt v. Kalinich* (1972), 53 Ill. 2d 137, 290 N.E.2d 219 (collapse of sewer wall actionable because of defendant's failure to provide lateral supports for the trench in which plaintiff was working); *Louis v. Barenfager* (1968), 39 Ill. 2d 445, 450, 236 N.E.2d 724, 727 ("if the apparatus in question was being put to a temporary use as a support for workmen at the time of the accident, it is a scaffold, regardless of its ultimate use as a part of the permanent structure"). Accordingly, Keyser asserts that consistent with these cases, he presented sufficient proof that the accident was within the scope of the statute. The evidence indicated that a support was necessary for plaintiff's work in the tunnel, that no supports were readily available, and that the miners regularly used the muck pile as a means of elevation. Hence, under these circumstances, Keyser concludes it was a question for the jury to decide whether MSD wilfully violated the Act by providing an inadequate support or by failing to provide a support where a support was required. See *Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 484 N.E.2d 542; *Mundt v. Ragnar Benson, Inc.* (1974), 18 Ill. App. 3d 758, 310 N.E.2d 633.

At trial, the plaintiff testified to the fact that the steel pegs were placed in the tunnel wall at an upward angle. The pegs were, according to the lowest estimate, at least 5½ feet or shoulder height on the wall and extended outward from the wall a distance greater than one foot. In order to remove the electric cable as required in the performance of his job, the plaintiff would have had to reach over his head in an outward motion. The plaintiff testified that he had never seen any

ladders or other supports available on the site for his use. William Kiehl, another miner who worked in the Nashville Avenue Shaft, testified that no support devices were provided in the tunnel structure itself. The safety superintendent for the plaintiff's employer, Fred Pinkerton, testified that ladders were available above ground but corroborated the testimony of Keyser and Kiehl that none were readily available within the tunnel because of space problems and therefore the miners were required to request their own supports by telephoning the surface workers. Mr. Pinkerton also testified that although daily safety reports to MSD were required, he did not fill any out and, further, that MSD did not have an engineer at the Nashville Avenue Shaft site to receive such reports or to perform an independent inspection.

As noted earlier, the plaintiff, in his testimony, which was corroborated by his co-workers, stated that whenever he or the other workers had to perform the task which caused his injury here, they elevated themselves through the use of the boom of the drill, the muck basket on the end loader, or the muck pile on which plaintiff slipped. The first two methods are clearly devices within the meaning of the Act, and the plaintiff would have been protected by the Act if he had been injured while using one of them as a support. Under such circumstances, we cannot find, as a matter of law, that the muck pile which plaintiff stepped on to reach a light cable did not constitute a support within the meaning of the statute, and, in any event, even if it was not a support, then the defendants can still be liable for failure to provide a necessary support when they were on notice that the miners were using the muck pile in lieu of an adequate support. To preclude the defendant's liability under the Act merely because the plaintiff failed to request a ladder, which was not already in the tunnel, from workers outside of the tunnel, we believe would defeat the purpose of the statute, which is to hold the employer strictly liable for injuries to workers caused by a wilful failure to provide adequate supports. Hence, the trial court properly denied the defendant's motion to dismiss plaintiff's complaint for failure to state a claim cognizable under the Structural Work Act.

■ Further, we cannot agree with the defendant, as stated above, that, as a matter of law, the pile of loose rock on the tunnel floor is not the type of support which the Structural Work Act was intended to cover and, in any event, the jury verdict here may have been based on a finding that the defendant wilfully failed to provide an adequate support where one was necessary.

■ The jury verdict in this case indicated that the jury found that

the defendant wilfully failed to provide ladders, scaffolds, or other proper supports to adequately protect the plaintiff from the injury he received here. Having reviewed the record, we cannot say that the jury verdict was against the manifest weight of the evidence and, thus, we affirm the judgment in the plaintiff's favor. Accordingly, we also find that the trial court properly denied defendant MSD's post-trial motion for judgment notwithstanding the verdict. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

For all of these reasons, we affirm the judgment of the circuit court of Cook County in favor of plaintiff in the amount of $350,000.

Judgment affirmed.

O'CONNOR and MANNING, JJ., concur.